1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ASVNINI PATEL and PRAVNIA PATEL,<br><br>                    Plaintiffs,<br><br>          v.<br><br>U.S. BANK, N.A. et al.,<br><br>                    Defendants. | Case No.: C 13-748 PSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND MOTION TO EXPUNGE**<br><br>**(Re: Docket Nos. 8, 9, 11)** |

        In this foreclosure action, Defendants U.S. Bank, N.A., et al, ("Defendants") move to dismiss the complaint filed by Plaintiffs Asvini Patel, et al ("the Patels") pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants also move to expunge the lis pendens notice placed on the deed for the subject property and for judicial notice of certain documents. Having considered the parties' papers and oral arguments, the court GRANTS Defendants' motion to dismiss and the motion to expunge.

                                        I.        BACKGROUND

        Except where otherwise noted, the court draws the following facts, taken as true for the purposes of a motion to dismiss, from the Patels' complaint.[1]

        On October 13, 2006, the Patels recorded a Deed of Trust ("DOT") in the Monterey County Recorder's Office against a property located at 24660 Vereda Corta, Salinas, California 93908 (the "Property").  The DOT secured a Promissory Note in the amount of $1,500,0000 in favor of

---

[1] *See* Docket No. 1.

United States District Court
For the Northern District of California

American Brokers Conduit ("ABC") as the original lender.   The DOT named United Capital Title Company ("United") as the trustee. MERS was named as the beneficiary as nominee for ABC.

On or about January 16, 2007, ABC securitized and sold the Patels' Note and its beneficial interest in the DOT to "2007-1 Mortgage Pass-Through Certificates, Series 18 2007-1," ("2007-1 Trust") a security trust with Defendant U.S. Bank, N.A. ("U.S. Bank") as trustee.  The securitization and sale took effect pursuant to a pooling and services agreement ("PSA").  No notice of the securitization was provided to the Patels, nor were the Patels in default at the time of the securitization.  ABC retained at most the servicing rights, but later transferred those rights to Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), and/or Homeward Residential, Inc. ("Homeward"), who proceeded to collect the Patels' mortgage payments, at least for a time.

On March 25, 2010, the Patels defaulted on their loan obligations, and a notice of default was recorded against the Property.[2]

On or about April 29, 2010, a substitution of trustee was recorded.  This document was signed by Theresa Esposito ("Esposito"), purportedly as Vice President of U.S. Bank, and Carolyn White ("White"), purportedly as Assistant Vice President of U.S. Bank.  Through this document U.S. Bank purports to substitute Power Default Services, Inc. ("PDS") as DOT trustee in place of original trustee, United.   Even though Esposito and White hold themselves out as authorized representatives of U.S. Bank, they are, according to the Patels, also robo-signers who have no personal knowledge of the facts pertaining to the Patels' DOT and beneficial interest, and were never properly authorized to act on behalf of the true beneficiaries of the note and DOT.

The Patels failed to cure their default, and on June 25, 2010 a notice of trustee's sale was recorded against the Property. [3]

---

[2] *See* Docket No. 9 Ex. B.

[3] *See id.* Ex. E.

Case No.: 13-748 PSG
ORDER

United States District Court
For the Northern District of California

There was no recorded assignment of the beneficial interest until July 6, 2010, well after the security trust closed.  The beneficial interest in the DOT initially was assigned from Mortgage Electronic Registration Systems, Inc. ("MERS") to Homeward (formerly known as American Home Mortgage Servicing, Inc.)[4] and from Homeward to U.S. Bank.[5]   The document assigning the interest was signed by Andrew Fuerstenberger ("Fuerstenberger") and Kathy Smith ("Smith"), as officers of MERS, but the Patels again allege that Fuerstenberger and Smith actually were employees of U.S. Bank and merely robo-signers for MERS.

The notice of default recorded on March 25 was later rescinded, and a notice of rescission was recorded on August 3, 2012.[6]

The Patels remained in default on their loan obligations, and another notice of default ("NOD 2") was recorded against the Property on October 19, 2012.[7]   The NOD 2 was signed by David Lopez, on behalf of PDS, as agent for beneficiary.[8]   The NOD 2 was accompanied by a Declaration of Due Diligence pursuant to Cal. Civil Code § 2923.5(b) and signed by Nurfeta Beklic as Vice President for an unknown business entity.

On October 23, 2012, PDS served a Debt Validation Notice on behalf of U.S. Bank and Homeward stating that the Patels' loan had been referred to PDS for foreclosure.

On January 16, 2013, the Patels filed this suit and assert seven causes of action:  (1) breach of express agreements; (2) breach of implied agreements; (3) slander of title; (4) violation of California Civil Code § 2923.5; (5) wrongful foreclosure; (6) violation of the RICO statute; and (7) unfair business practices.

---

[4] *See* Docket No. 1 ¶ 24; Docket No. 9 Ex. C.

[5] *See* Docket No. 1 ¶ 25; Docket No. 9, Ex.  D.

[6] *See* Docket No. 9 Ex. F.

[7] *See* Docket No. 9 Ex. G; *see also* Docket No. 1 ¶ 27.

[8] *See* Docket No. 1 ¶ 27.

Case No.: 13-748 PSG
ORDER

## II.   LEGAL STANDARDS

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[9] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[10] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[12]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[13] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[14] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[15] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."[16]

---

[9] Fed. R. Civ. P. 8(a)(2).

[10] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[12] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[13] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[14] *See id.* at 1061.

[15] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[16] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Case No.: 13-748 PSG
ORDER

### III.    DISCUSSION

**A.    Request for Judicial Notice**

Defendants request judicial notice of the following: foreclosure-related documents recorded in the Monterey County Recorder's Office (Exs. 1-7).[17] The Patels object to judicial notice of disputed facts contained in the documents.[18]

The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known . . . or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[19]  The court notes that the copy of the DOT Defendants submitted appears to be identical to the copy of the DOT that the Patels attached to their state court complaint and so judicial notice of that document is appropriate.[20]  Defendants have not requested that the court take notice of disputed facts within the documents, and the court will not rely on facts contained therein that reasonably may be subject to dispute.[21] The authenticity of the foreclosure-related documents is not in dispute and may be verified by resort to the public record.[22] Defendants request for judicial notice is GRANTED as to the all of the documents.

**B.    Breach of Express Agreements**

The Patels contend that Defendants breached the DOT and the PSA by failing to record the assignment of the beneficial interest in the DOT within 90 days of the close of the DOT.  Plaintiffs

---

[17] *See* Docket No. 9.

[18] *See* Pls.' Objections to Defs.' Request for Judicial Notice (Docket No. 18-2).

[19] Fed. R. Evid. 201(b).

[20] *See* Docket No. 1 Ex. B.

[21] *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (finding the district court erred in relying on disputed facts contained within documents that otherwise were the proper subject of judicial notice). *See also* Fed. R. Evid. 201(b).

[22] *See* Fed. R. Ev. 201(b)(2).

Case No.: 13-748 PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

bringing a breach of contract claim must allege (1) "the contract," (2) their "performance or excuse for nonperformance," (3) the defendants' breach, and (4) damage to the plaintiffs from the breach.[23]

As to the DOT part of their claim, even assuming a DOT serves as a contract, the Patels do not and cannot allege that they themselves performed under the contract.[24]  Nor do they offer any excuse for their nonperformance.  Separately, the Patels contend that Defendants breached the power of sale requirements in paragraph 22 of the DOT because they were not in default when the DOT was assigned in March 2010, first from ABC to Homeward and then from Homeward to U.S. Bank.  But a plain read of paragraph 22 makes clear that the default and notice provisions of paragraph 22 apply to a sale of the property, not a transfer of the beneficial interest in the DOT. Paragraph 20 applies to this later transfer, and it is explicit that "[t]he Note or a partial interest in the Note (together with [the Deed of Trust]) can be sold one or more times without prior notice to Borrower."[25]  When the power of sale was actually invoked, a notice of default was properly recorded, on October 19, 2012.

As to the PSA part, the Patels do not allege that they are parties to the PSA, only that because Defendants violated the PSA they were harmed.  That set of factual allegations is insufficient under a breach of express contract theory.  The Patels also fail to attach a copy of the securitization agreement to their complaint or set out the agreement's terms in the body of their complaint, further dooming their claim.[26]

_____

[23] *Wall St. Network, Ltd. v. N.Y. Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008).

[24] *See Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (2002); *Cross v. Downey Savings & Loan Ass'n*, Case No. CV 09-317 CAS (SSx), 2009 WL 481482, at *2 (C.D. Cal. Feb. 23, 2009).

[25] Docket No. 9 Ex. A ¶  20.

[26] *See Harris v. Rudin, Richman & Appel*, 74 Cal. App. 4th 299, 307 (1999) (holding that if a claim is based upon an "alleged breach of a written contract, the terms must be set out verbatim in the

Case No.: 13-748 PSG
ORDER

## C.      Breach of Implied Agreement

In addition to reframing their ill-considered express power-of-sale claim as an implied breach claim, the Patels also bring an implied breach claim based on the supposed failure to record the assignments of the DOT.  It is undisputed, however, that both the assignment to Homeward and the assignment to U.S. Bank were recorded, on July 6, 2010.  Even if this were not the case, California law does not require the recording of these assignments in order to non-judicially foreclose.[27]  The Patels also contend Defendants, and in particular Homeward and Wells Fargo, breached an implied "obligation" by refusing to honor some type of indemnification obligation created by their enforcement of the power of sale clause.  The Patels' factual allegations, however, do not support the existence of any such implied agreement because they reveal nothing about the nature of this obligation or how it was reached by the parties.

## D.      Slander of Title

The Patels allege slander of title in connection with the recorded notice of default, the notice of trustee's sale, the substitution of trustee and the assignment of the DOT.  Slander of title "occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss."[28]  "The recordation of an instrument facially valid but without underlying merit will give rise to an action for slander of title."[29]  To state a claim for

---

body of the complaint or a copy of the written agreement must be attached and incorporated by reference").

[27] *See Estillore v. Countrywide Bank FSB*, Case No. CV F 10-1243 LJO GSA, 2011 WL 348832, at *15 (E.D. Cal. Feb. 2, 2011); *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 122 (2011).

[28] *Truck Ins. Exchange v. Bennett*, 53 Cal. App. 4th 75, 85 (1997).

[29] *Stamas v. City of Madera*, 795 F. Supp. 2d 1047, 1068 (E.D. Cal. 2011) (citing *Seely v. Seymour*, 190 Cal. App. 3d 844, 857 (1987)). *See also Ogilvie v. Select Portfolio Servicing*, 12-CV-001654-DMR, 2012 WL 3010986, at *3 (N.D. Cal. July 23, 2012).

Case No.: 13-748 PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

slander of title, the Patels must allege: "1) a publication, 2) which is without privilege or justification, 3) which is false, and 4) which causes direct and immediate pecuniary loss."[30]

Defendants challenge the Patels' slander of title claim on a number of grounds. Defendants first argue that the Patels cannot allege falsity because U.S. Bank was the duly authorized trustee under the DOT and so Cal. Civ. Code § 2924(a) entitled it to initiate non-judicial foreclosure proceedings.  Defendants argue that the Patels must allege facts that, if true, show the foreclosing entity was not assigned the relevant debt in any manner.[31] Defendants also argue that the Patels cannot state a claim for slander of title because the recordation of the notice of default is privileged under Cal. Civ. Code § 47(c)(1) pursuant to Section 2924(d)(1). Finally, Defendants dispute that the Patels have sufficiently alleged any direct pecuniary loss.

The Patels respond first that falsity is alleged because the signatures on the relevant documents are of "robo-signers" who lacked the legal capacity to sign, rendering the documents invalid. As will be explored below, the Patels also argue that there was no interest to assign in the DOT based on the transfer dates and the dissolution of the security trust. With respect to the qualified common interest privilege, the Patels further respond that Section 47(c)(1) protects only communications made without malice.[32]  The Patels argue that U.S. Bank acted in reckless disregard of their rights when its employees signed documents without legal authority that they knew would initiate a foreclosure process to which U.S. Bank was not entitled.  The Patels further allege that without legally authorized signatures and without a legitimate transfer of beneficial

---

[30] *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009).

[31] *See Gomes*, 192 Cal. App. 4th at 1154 (holding that Cal. Civ. Code § 2924 does not provide for judicial action in order to determinate whether a nominee is authorized to initiate foreclosure on behalf of the noteholder); *Herrera v. Fed. Nat. Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1506 (2012).

[32] *See Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 336 (2008).

Case No.: 13-748 PSG
ORDER

interest, the notice of default, the notice of trustees' sale and the remaining documents are invalid, null and void, and therefore improperly cloud the title of the Property.

The Patels have pled sufficiently the first three elements of their claim. Defendants do not dispute that at a minimum the publicly-recorded notice of default and notice of trustees' sale constitute "publication" under the statute. The court also must accept as true at least the Patels' allegations regarding falsity that they base on false signatures or unauthorized signatures. Defendants do not challenge these allegations. This is sufficient to state the falsity element of the slander of title claim.[33]

With respect to privilege, Section 47(c)(1) defines a privileged communication, among others, as a "communication, without malice, [made] to a person interested therein (1) by one who is also interested." The statutorily-required notices in nonjudicial foreclosure procedures are privileged communications under the qualified common-interest privilege of Section 47.[34] Malice as an exception to the privilege doctrine may be established by a showing that the defendant "lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."[35]

The Patels allege that malice is established by the recording of the documents by those who were aware that they could not be the true beneficial interest holder of the DOT. They further allege that U.S. Bank could not be the true beneficial interest holder of the DOT because the original lender ABC failed in its attempt to assign the beneficial interest first to the Homeward (at the time known as AHMSI) and then from Homeward to U.S. Bank. The Patels claim that the assignments failed because the PSA required the assignments to be completed within 90 days of its

---

[33] See, e.g., Ogilvie, 2012 WL 3010986, at *3.

[34] See id. at *4; 168 Cal. App. 4th at 333.

[35] 168 Cal. App. 4th at 336 (citations omitted).

Case No.: 13-748 PSG
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

closing, which according to the Patels occurred in January 2007, but the assignments were only recorded in July 2010. The Patels, however, appear to conflate "assignment" and "recording."[36] The assignment involves the transfer of rights; the recording publishes that transaction.[37] Nevertheless, because the Patels sufficiently allege that the assignments themselves occurred in March 2010,[38] which they claim was after the 2007-1 Trust could accept the beneficial interest, and because Defendants do not address malice in their papers, the Patels' claim regarding malice passes muster.

The Patels nevertheless fail to state a "direct and immediate" pecuniary harm as a result of the alleged false publication. The monetary harm pled in the complaint is based on the alleged "impair[ment] of vendibility" to the Property, as well as Plaintiffs' need to retain attorneys and file suit in order "to cancel the instruments casting doubt on Plaintiff's title."[39] The Patels, however, have not alleged any sale that they were unable to complete because of the alleged cloud on their title, nor do their claims in this action suffice as "quiet title" causes of action for which they could be entitled to attorneys' fees. Their allegations of harm are insufficient in a claim for slander of title because "fees incurred to quiet title are recoverable and fees incurred prosecuting the slander of title are not."[40]

**E.      Section 2923.5**

---

[36] *See* Docket No. 1 ¶ 22 (noting there was no "recorded assignment until July 6, 2010").

[37] *Cf. In re Salazar*, 470 B.R. 557, 561 (S.D. Cal. 2012) (noting that for deeds of trust, it is unnecessary for an assignment to be recorded before initiation of foreclosure proceedings, thereby underscoring the difference between the two actions).

[38] *See* Docket No. 1 ¶ 24.

[39] Docket No. 1 ¶¶ 33, 34.

[40] *Ogilvie*, 2012 WL 3010986, at *4.

10

Case No.: 13-748 PSG
ORDER

Cal. Civ. Code § 2923.5 imposes various requirements before a notice of default can be recorded pursuant to Cal. Civ. Code § 2924. These requirements include an obligation to contact the borrower in advance and to file a declaration of compliance.

These requirements, however, only apply to property that is owner-occupied. The Patels do not allege that the Property is "owner-occupied," as defined by the statute.[41] Their claim fails as a result.

**F.    Wrongful Foreclosure**

Wrongful foreclosure is an action in equity in which the mortgagor or trustor seeks to unwind an "illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust" – or to prevent such a sale from occurring.[42] The plaintiff must demonstrate prejudice or harm and, depending on whether the plaintiff is challenging a sale or seeking to prevent a pending sale, may be required to tender payment of the debt, or at least to allege the ability to tender payment.[43]

The court initially must note that the Patels concede that no sale of the Property has yet taken place and do not allege they have tendered the full amount of their outstanding obligation.

---

[41] *See* Cal. Civ. Code § 2923.5(i) ("This section shall apply only to mortgages or deeds of trust recorded from January 1, 2003, to December 31, 2007, inclusive, that are secured by owner-occupied residential real property containing no more than four dwelling units. For purposes of this subdivision, 'owner occupied' means that the residence is the principal residence of the borrower as indicated to the lender in loan documents.").

[42] *Permito v. Wells Fargo Bank, N.A.*, Case No. C-12-00545 YGR, 2012 WL 1380322, at *3 (N.D. Cal. Apr. 20, 2012) (quoting *Lona v. Citibank N.A.*, 202 Cal. App. 4th 89, 104 (2011)).

[43] There is some division in the courts as to whether the "tender rule" precludes a claimant from seeking to prevent a pending nonjudicial foreclosure, as opposed to attempting to "unwind" a foreclosure that has taken place. *See Rodriguez v. Bank of America*, No. C 11–3839–PSG, 2011 WL 5864108, at *3 (N.D. Cal. Nov. 22, 2011). *Cf. Silva-Pearson v. BAC Home Loans Servicing, LP*, No. C 11-1491 SI, 2011 WL 2633406, at *2 (N.D. Cal. July 6, 2011) (finding no basis for the "tender rule" in an action challenging a pending foreclosure, as opposed to the commonly-cited line of cases requiring tender based on an attempt to set aside foreclosure); *Yazdanpanah v. Sacramento Valley Mortg. Group*, C 09-2024 SBA, 2009 WL 4573381, at *7 (N.D. Cal. Dec. 1, 2009) (dismissing claim for wrongful foreclosure on grounds that "debtor must allege a credible tender of the amount of the secure debt" regardless of pending or past status of foreclosure).

11

Case No.: 13-748 PSG
ORDER

Defendants do not, however, raise the "tender rule" as a basis for seeking dismissal of the wrongful

foreclosure claim. Courts moreover have recognized various exceptions to the tender rule,

including based on an allegation that a foreclosure sale is totally void and not merely voidable due

to, for example, a notice error.[44] Under these circumstances, the court cannot find error in the

Patels' failure to allege compliance with the tender rule.

Turning to whether Defendants' initiation of the nonjudicial foreclosure process was illegal,

the heart of the Patels' claim is that neither the trustee nor the beneficiary had the authority to

invoke the power of sale or right to foreclose by virtue of the improper transfer of the beneficial

interest to U.S. Bank.  Once again, the Patels highlight the timing of the purported assignment of

the beneficial interest to U.S. Bank in violation of the PSA.  The only substantive argument

Defendants present in their two briefs is that the Patels lack standing to bring such a challenge.  But

this court and others have rejected the notion that a plaintiff is barred from bringing a wrongful

foreclosure claim based on a defect in the chain of title.[45]

Finally, the Patels allege that if Defendants proceed with the foreclosure sale, Plaintiffs will

be subject to the wrongful loss of their home.[46]  Defendants have not challenged this allegation as

inadequate. As expressed by the court in *Tamburri*, "the threat of foreclosure by the wrong party

would certainly be sufficient to constitute prejudice to the homeowner because there is no power of

---

[44] *See Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899-EMC, 2011 WL 6294472, at *4-5 (N.D. Cal. Dec. 15, 2011) (finding multiple "exceptions and qualifications counsel against a blanket requirement of the tender rule at the pleading stage" based on a review of state and federal case law). *See also Ogilvie*, 2012 WL 3010986, at *6 (declining to apply the tender rule at the early pleading stage); *ING Bank v. Ahn*, No. C-09-995-TEH, 2009 WL 20893965, at *2 (N.D. Cal. July 13, 2009) (same).

[45] *See, e.g., Mena v. JP Morgan Chase Bank, N.A.*, Case No. 12-1125 (PSG), 2012 WL 3987475, at *3 (N.D. Cal. Sept. 7, 2012); *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899-EMC, 2011 WL 6294472, at *4-5 (N.D. Cal. Dec. 15, 2011); *Sacchi v. Morg. Elec. Registration Sys., Inc.*, No. CV-11-1658 AHM (CWx), 2011 WL 2533029, at *7-8 (C.D. Cal. June 24, 2011).

[46] *See* Docket No. 1 ¶ 40.

12

Case No.: 13-748 PSG
ORDER

sale without a valid notice of default."[47] The prospect of wrongful foreclosure stemming from the issuance of foreclosure not grounded in a valid, beneficial interest is thus sufficient.

In sum, because the Patels have stated a facially plausible claim that the nonjudicial foreclosure process was not founded on a valid, beneficial interest they may pursue their wrongful foreclosure claim.

## G.   RICO

The Patels allege that Defendant violated 18 U.S.C. § 1962, although they do not specify under which section the claims arise.  Because their allegations refer to Section 1962(d) but also suggest that Defendants engaged in activity prohibited by Section 1962(a), the court considers their allegations under the rubrics of both Section 1962(a) and Section 1962(d).  In either case, their claims fail.

To state a claim under Section 1962(a), the Patels must allege that (1) "a person receives income derived directly or indirectly form a pattern of racketeering activity or unlawful debt"; (2) "that person uses or invests, directly or indirectly, any part or proceeds of such income in the acquisition of any interest in, or the establishment or operation of any enterprise"; and (3) "that enterprise is engaged in or its activities affect interstate or foreign commerce."[48]  The Patels also must allege "that the investment of racketeering income was the proximate cause of his injury."[49] To state a claim under Section 1962(d), on the other hand, they need not allege any action in

---

[47] *Tamburri*, 2011 WL 6294472 at *14 (citing *Castillo v. Skoba*, No. 10cv1838 BTM, 2010 WL 3986953, at*2 (S.D. Cal. Oct. 8, 2010) ("The power of sale in a nonjudicial foreclosure may only be exercised when a notice of default has first been recorded.... [A]ny foreclosure sale based on a void notice of default is also void.") (citing Cal. Civ. Code § 2924; 5–123 California Real Estate Law & Practice § 123.01).

[48] *Jalili v. Far East Nat. Bank*, Case No. C 12-5962 SBA, 2013 WL 1832648, at *3 (N.D. Cal. May 1, 2013).

[49] *Id.*

Case No.: 13-748 PSG
ORDER

furtherance of a RICO violation.[50]  They are required only to allege that Defendants agreed to act in a way that violates one of the other sections of 18 U.S.C. § 1962.[51]

Under either provision, the Patels also must allege that Defendants engaged in or agreed to engage in one of the activities listed in 18 U.S.C. § 1961(a) as a predicate act of racketeering.[52]  If the predicate act of racketeering involves fraud, the Patels are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).[53]

Defendants assert that the Patels fail to allege facts sufficient to state a RICO claim.  The Patels' allegations regarding the underlying racketeering activity appear to address two types of fraudulent conduct on the part of Defendants.  First, they appear to claim that Defendants' failure to inform them of the securitization of the loan instrument was a fraudulent omission on which they relied to their detriment.[54]  Second, the Patels claim that Defendants engaged in "the theft of real property through illegal foreclosure liens."[55]  They allege that through the securitization of loans, Defendants conspired to upend traditional recording requirements, and then through the use of the mail and the internet, they filed documents with false claims regarding their interests in the properties upon which they sought to foreclose.[56]

Although the Patels' complaint contains an exposition of the ills that the banking industry, including Defendants, have wrought on the American economy, the judicial system, and

---

[50] *See Salinas v. United States*, 522 U.S. 52, 63 (1997).

[51] *See id.* at 64.

[52] *See Occupational-Urgent Care Health Sys., Inc. v. Sutro & Co., Inc.*, 711 F. Supp. 1016, 1021 (E.D. Cal. 1989).

[53] *See id.*

[54] *See* Docket No. 1-1 ¶¶ 71-79.

[55] *Id.* at ¶ 82.

[56] *See id.* at ¶¶ 80, 83-84, 91.

14

Case No.: 13-748 PSG
ORDER

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

homeowners,[57] it fails to include the details of the alleged mail and wire fraud supposedly giving rise to the RICO claim.[58]  Rule 9(b) requires the Patels to state "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."[59]  The Patels' allegations fail to meet this standard.  As a preliminary matter, their shift between the types of fraud on which they base their RICO claims already reveals that they have not alleged with specificity the predicate acts.  Is the RICO claim based on the allegedly fraudulent omission regarding the securitization of the loan or is it based on alleged misrepresentations about the proper beneficiary of the loan?  The complaint does not provide the answer.

The allegations the Patels do make further reveal that they have failed to meet the requirements of Rule 9(b).  For example, they assert that "[a] separate count of Mail Fraud took place each and every time a fraudulent pleading, Affidavit, Promissory Note assignment, mortgage or mortgage assignment was sent by a Defendant through the use of the US [sic] mail."[60]  Nothing in that statement explains which documents were fraudulent, which defendants sent the fraudulent documents, when they sent the document, or what in the documents was false.  Another example highlights the broad generalization of the Patels' complaint.  They assert that "[t]hese Defendants intentionally participated in a scheme to defraud everyone, including the Plaintiffs" and that they

---

[57] *See, e.g. id.* at ¶ 80 ("[Defendants] undermined long established [sic] rights and sabotaged the judicial process itself by de-emphasizing the importance of, and eventually eliminating, 'troublesome' documentation requirements."); *id.* at ¶ 94 ("The conspirators intended to maintain an absolute stranglehold on the American economy for many decades, if not centuries into the future.").

[58] *See Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir. 1988) (applying Rule 9(b) to RICO claim based on fraud); *see also Occupational-Urgent*, 711 F. Supp. at 1021 (noting Rule 9(b) applies to RICO claims based on fraud).

[59] *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

[60] Docket No. 1-1 at ¶ 83.

15

Case No.: 13-748 PSG
ORDER

thereby "contribut[ed] to the foreclosure crisis."[61]  These allegations do not suffice to meet the particularity necessary to allege successfully a claim of fraud.  And so, to the extent that the Patels allege a violation of Section 1962(a), their claim fails.

Their attempt to allege a Section 1962(d) claim likewise fails.  The Patels assert conclusorily that Defendants conspired to steal real property through illegal foreclosure liens,[62] but the actual facts they allege do not support that claim. They assert that various "securitizers/underwriters," "bankers," and Defendants essentially agreed to undermine the traditional mortgage and lending system through the securitization of loans and a failure to abide by traditional recording mechanisms.[63]  But these actions do not coincide with any of the listed predicate activities under Section 1961(a), which is required to state a RICO claim.  Even assuming that the allegations could support some kind of mail fraud claim against Defendants, nothing in the Patels' allegations supports that Defendants and any of the unnamed co-conspirators agreed to engage in the fraud.[64]

## H.     Unfair and Deceptive Business Practices

The Patels bring their Cal. Bus. and Prof. Code § 17200 claim as a "derivative cause of action" based on Defendants' violations of Section 2924.  Even if Section 2924 supports their claim for wrongful foreclosure, their Section 17200 claim fails because they have not asserted the requisite harm.  They allege that because of Defendants' unfair business practices, "a cloud has been placed on Plaintiff's title and [his] interest in the Subject Property has been placed in

---

[61] *Id.* at ¶ 73.

[62] *See id.* at ¶ 82.

[63] *See id.* at ¶¶ 83-91.

[64] *See, e.g., id.* at 83 (alleging false documents were sent through the mail but not alleging any agreement to do so).

16

Case No.: 13-748 PSG
ORDER

jeopardy."[65]  But Section 17204 requires plaintiffs to establish that they have suffered an "injury in fact and ha[ve] lost money or property as a result of the unfair competition."[66]  Because the Patels have not alleged that they lost either money or property as a result of Defendants' actions, other than what they owe on the loan, their claim fails.

## I.    Motion to Expunge

Defendants also request that the Patels' lis pendens, which they recorded in Monterey County after initiating this suit, be expunged.[67]  The court must look to California law when determining the propriety of expunging a lis pendens.[68]  Cal. Code of Civ. P. § 405.20 states that "[a] party to an action who asserts a real property claim may record a notice of pendency of action in which that real property claim is alleged."  But "[a]t any time after notice of pendency of action has been recorded, any party . . . may apply to the court in which the action is pending to expunge the notice."[69]  "[T]he court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim."[70]  The court must engage in a two-step process by first determining whether any of the claims involve "real property" and second whether any of the claims are probably viable.[71]

---

[65] *Id.* at ¶ 107.

[66] *See Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009).

[67] *See* Docket No. 11.

[68] *See* 28 U.S.C. § 1964.

[69] Cal. Code Civ. P. § 405.30.

[70] *Id.* § 405.32.

[71] *See Christiansen v. Wells Fargo Bank*, Case No. C 12-02526 DMR, 2012 WL 4716977, at *10 (N.D. Cal. Oct. 1, 2012).

17

Case No.: 13-748 PSG
ORDER

"The party who recorded the notice of lis pendens bears the burden of proof in opposing expungement."[72]

Defendants assert that because the Patels have failed to state any cause of action sufficiently, the lis pendens should be expunged. The court has determined, however, that the wrongful foreclosure claim passes muster, and since the wrongful foreclosure action "is a claim which would affect the title to, or right of possession of, the property at issue"[73] it suffices as a "real property claim."[74] Even though the first prong may be satisfied, however, the Patels have not made a sufficient showing under the second prong. They have not offered any evidence, and in fact offer only the allegations in their complaint, to show that their wrongful foreclosure claim is "probably viable."[75] Because the Patels have not offered evidence to show by a preponderance of the evidence that their cause of action is viable, the court GRANTS Defendants' motion to expunge the lis pendens.

## IV.   CONCLUSION

The court dismisses all claims save for the wrongful foreclosure cause of action and finds the Patels have not met their burden to avoid expunging the lis pendens on the property. Because this is the Patels' first complaint, the court finds that leave to amend is appropriate.[76] The Patels therefore may file an amended complaint within fourteen days.

---

[72] *Sencion v. Saxon Mortg. Servs., Inc.*, Case No. C 10-3108 SBA, 2012 WL 1355691, at *4 (N.D. Cal. Apr. 17, 2012).

[73] *Id.*; *see also* Cal. Code Civ. Proc. § 405.4 ("'Real property claim' means the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property.").

[74] *Id.*

[75] *See Hunting World, Inc. v. Super. Ct.*, 22 Cal. App. 4th 67, 70 (1994) ("Good faith and a proper purpose are no longer sufficient to maintain notice of lis pendens. The claimant must show a probably valid claim.").

[76] *See* Fed. R. Civ. P. 15(a); *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

18

Case No.: 13-748 PSG
ORDER

United States District Court
For the Northern District of California

**IT IS SO ORDERED.**

Dated: July 16, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: 13-748 PSG
ORDER